UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,                    Case No. 24-20376

      Plaintiff,                              Hon. F. Kay Behm
v.                                           United States District Judge

MONTINEZ SMITH,                              Hon. Curtis Ivy Jr.
                                             U.S. Magistrate Judge

      Defendant.
_____ /

## OPINION AND ORDER ON DEFENDANT'S
## MOTION TO DISMISS/QUASH INDICTMENT (ECF No. 20)
## AND MOTION TO SUPPRESS (ECF No. 15)

### I.    PROCEDURAL HISTORY

This matter is before the court on Defendant Montinez Smith's

("Smith") Motion to Quash his indictment for a violation of 18 U.S.C.

§ 922(g)(1) (ECF No. 20), as well as his Motion to Suppress a gun that

was seized from a vehicle he was driving, on the grounds that it is the

fruit of an unconstitutional search and seizure contrary to the Fourth

Amendment (ECF No. 15). A hearing was held on March 13, 2025, at

which counsel for both parties appeared.

For the reasons set out below, the court **DENIES** the motions in

full.

1

## II.   FACTUAL BACKGROUND

Smith is charged with the possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (the federal felon-in-possession law).  The firearm in question was found after a traffic stop in the search of the borrowed car Smith was driving.  Three days later while in jail, Smith made a statement to agents in which he claimed that the gun was in the car without his knowledge and that he first saw the gun under the seat while looking for his state ID with the trooper standing at the window. ECF No. 15, PageID.42; ECF No. 16, PageID.51.

More specifically: on July 6, 2024, at about noon, Smith was alone driving his girlfriend's car.  *Id.* at PageID.40.  It did not have a license plate displayed.  Trooper McGuckin of the Michigan State Police (MSP) stopped Smith for that traffic violation on Clio Road in Flint, MI.  *Id.*; *see also* McGuckin Bodycam Footage [hereinafter McGuckin Bodycam at [timestamp]].[1]  Smith pulled over about 20 seconds after the patrol car lights were activated.  The trooper had not previously observed Smith, nor did he have any information that Smith had been doing anything suspicious.  ECF No. 15, PageID.40.  As the trooper

---

[1] The court uses the timestamp in the upper right corner of the video.

interviewed Smith, Smith explained he never had a driver's license, but he did have an ID card that he gave the trooper.  McGuckin Bodycam at 12:31:18-38.  Smith could not find the registration and insurance, even after he called his girlfriend while the trooper waited.  *Id.* at 12:33:00-34:15.  In the conversation, McGuckin asked multiple times for permission to search the vehicle; Smith did not give him permission. *E.g., id.* at 12:33:55.  McGuckin claims that Smith was unusually nervous; Smith argues that he did not exhibit nervousness beyond the range of what a person would ordinarily show in a traffic stop.  ECF No. 15, PageID.41.  McGuckin again tried to convince Smith to let him search the vehicle.  He told Smith that he was not going to take Smith to jail and that he did not want to arrest Smith.  Smith told McGuckin several times that he only had marijuana in the car.  McGuckin Bodycam at 12:34:30.  McGuckin explained to Smith that any marijuana in the car was legal and he would not do anything about it. After McGuckin's attempts to convince Smith to give consent, and Smith persisted in refusing to give permission, McGuckin had Smith exit the car.  *Id.* at 12:35:20.  McGuckin had told Smith that this would result in a search of the vehicle.  *Id.* at 12:34:45 ("I could just take you

out, put you in handcuffs, and then search your car and find whatever it is you're not supposed to have."). At times, the Government has argued that Smith did not "immediately" comply with that order to step out of the vehicle. The video shows that Smith spent about 45 seconds talking with McGuckin before exiting the vehicle, repeating that he only had marijuana in the vehicle and McGuckin reassuring him that marijuana was legal. After confirming he could take some belongings out of the car with him, Smith stepped out. McGuckin started to handcuff Smith after Smith complied with his order to place his belongings on top of the car, and Smith then ran off. *Id.* at 12:36:20.

As Smith ran away, McGuckin radioed for backup, which included a helicopter to spot Smith. ECF No. 15, PageID.41. Meanwhile, McGuckin performed a warrantless search of the car, looking under the front passenger seat. *Id.* He rummaged around on the passenger floor, where there appeared to be trash, and then pulled out a cloth bag from under the seat that appeared open towards the rear of the car. *Id.* The bag itself was empty, but he then reached under the seat and found the gun at issue in this motion, a loaded Glock .40 caliber handgun under

4

the front passenger seat of the car.  ECF No. 16, PageID.47.  Smith was

apprehended a little over ten minutes later.  ECF No. 15, PageID.41.

Defendant has averred that Smith's girlfriend, Bridney Gibbs,

owned the car, and gave a statement that it was her gun she had placed

in the bag and put under the seat of her car that morning, and that she

never told Smith about it or showed it to him.  *Id.*  Defendant alleges

that Smith's DNA or fingerprints were not found on the gun.  *Id.*

### III.   MOTION TO QUASH (ECF No. 20)

Defendant first moves to quash his indictment under Fed. R.

Crim. P. 7(c)(1) because the indictment "failed to state with specificity

an essential fact of the offense; to wit: that the defendant knowingly

controlled the firearm in question[.]"  ECF No. 20, PageID.76.

On July 17, 2024, a grand jury authorized an indictment against

Smith alleging a violation of 18 U.S.C. § 922(g)(1), felon in possession.

ECF No. 1, PageID.1.  The indictment reads as follows:

> On or about July 6, 2024, in the Eastern District
> of Michigan, the defendant, Montinez Smith,
> knowing he had been convicted of an offense
> punishable by a term of imprisonment exceeding
> one year, **knowingly possessed**, in and affecting
> commerce, a Glock, model 22, .40 caliber semi-
> automatic pistol, in violation of Title 18, United
> States Code, Section 922(g)(1).

5

*Id.* (emphasis added).

Fed. R. of Crim. P. 7(c)(1) requires "[t]he indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." An indictment is sufficient (in the sense of stating an offense, *see* Federal Criminal Rule 12(b)(3)(B)(v)) if it alleges conduct satisfying every element of the charged offense. *United States v. Maddux*, 917 F.3d 437, 443 (6th Cir. 2019) (quoting *United States v. Olive*, 804 F.3d 747, 753 (6th Cir. 2015)). The indictment satisfies those requirements. The elements of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) include (1) that the defendant had previously been convicted of a crime punishable by imprisonment of more than one year, (2) that following his conviction, the defendant knowingly possessed the firearm, (3) that at the time the defendant possessed the firearm, he knew he had been previously convicted of a crime punishable by imprisonment for more than one year, and (4) that the defendant's possession of the firearm was in or affecting interstate commerce. Sixth Circuit Pattern Jury Instructions 12.01. "[A]n indictment that recites statutory language in describing the offense 'is generally sufficient ... as long as those words of

6

themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'" *United States v. Hudson*, 491 F.3d 590, 593 (6th Cir. 2007) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)). This indictment, alleging that Smith knowingly possessed a gun when he knew he had previously been convicted of a felony, does that.

Defendant's argument here is that, in Defendant's view, the uncontroverted facts would not establish "knowing" control of the firearm. *See* ECF No. 20, PageID.80-82 (challenging whether the uncontroverted evidence establishes knowing possession); Fed. R. Crim. P. 12(b)(3)(B)(v) (motion to dismiss indictment for failure to state an offense). However, as the Government has pointed out in response, Defendant's factual conclusions are an issue for a jury. *See, e.g.*, *United States v. Ali*, 557 F.3d 715, 719 (6th Cir. 2009) (A motion to dismiss indictment is appropriate only "when it raises questions of law rather than fact."); *Universal Milk Bottle Serv. v. United States*, 188 F.2d 959, 962 (6th Cir. 1951) (holding a motion "claiming that [the indictment's] allegations are false and untrue" improper because "issues of fact" must

"be tried by a jury"). An indictment "valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence." *United States v. Peterson*, No. 20-20448-7, 2022 U.S. Dist. LEXIS 33105, at *4 (E.D. Mich. Feb. 24, 2022) (quoting *United States v. Calandra*, 414 U.S. 338, 345 (1974), *Costello v. United States*, 350 U.S. 359, 363 (1956)).

For these reasons, Defendant's motion under Fed. R. Crim. P. 7(c)(1) is **DENIED**.

## IV.    MOTION TO SUPPRESS (ECF No. 15)

The second matter before the court is Defendant's motion to suppress the gun found in his vehicle as the fruit of an unconstitutional search. The burden of production and persuasion is on the defendant who seeks to suppress. *See United States v. Barber*, 887 F.2d 266 (6th Cir. 1989) (citing *United States v. Feldman*, 606 F.2d 673 (6th Cir. 1979), *cert. denied sub nom Zalmanowski v. United States*, 445 U.S. 961 (1980). The standard of proof is preponderance of the evidence. Once a defendant meets their burden, it shifts to the United States. Ultimately, then, once a defendant raises legitimate arguments in favor of suppression, the Government bears the burden to show by a

preponderance of the evidence that its search or seizure was reasonable. *United States v. Vining*, 675 F. Supp. 3d 778, 785 (E.D. Mich. 2023) (citations omitted).  An evidentiary hearing was held on the motion on March 13, 2025, at which Trooper McGuckin testified.

Defendant contends that the traffic stop was prolonged such that the continued detention of Smith became a violation of his Fourth Amendment rights.  The subsequent search of the vehicle and the seizure of the gun, and the statement Smith later gave to the agents, were the fruit of that illegal detention. Even if that were not so, Defendant argues, the vehicle exception for a warrantless search does not apply because there was no probable cause to search the car and Smith was blocks away from the car when it was searched.  ECF No. 15, PageID.40, 44.

The government responds that the stop was not prolonged because McGuckin was still conducting the ordinary inquiries of the stop, and that McGuckin had probable cause to search the vehicle, but even if there were not probable cause, the discovery of the gun was inevitable and therefore suppression is not appropriate.  ECF No. 16, PageID.54, 56.

In the court's view, the traffic stop was not prolonged because Smith was driving without a license and, even assuming that Trooper McGuckin would not have arrested him for that act, Smith could not have ended the traffic stop until someone arrived to pick him up. Defendant is correct that the officer lacked probable cause to search his vehicle, however, the doctrine of inevitable discovery admits the gun because the vehicle would have been impounded and searched by police regardless of the illegal search.

## A.    The stop was not unconstitutionally prolonged

Defendant first contends that the reasonable detention of Smith for the purpose of investigating his traffic offense was abandoned by MSP Trooper McGuckin when McGuckin concluded his investigation of suspected traffic offenses and indicated that he was not taking any action to cite or arrest Smith for the traffic violations.  There was no new information, says Smith, to give rise to a reasonable suspicion of a non-traffic offense.  Without continued justification, the further detention of Smith became a violation of his Fourth Amendment rights. ECF No. 15, PageID.40.

A seizure for a traffic violation justifies a police investigation of
that violation. *Rodriguez v. United States*, 575 U.S. 348, 354 (2015).  In
*Rodriguez,* the Supreme Court explained that as part of a traffic stop,
officers can engage in "ordinary inquiries incident to the stop."  One of
the inquiries is "determining whether there are outstanding warrants
against the driver." *Rodriguez*, 575 U.S. at 355.  A police officer may
also, as a matter of course, order the occupants of a lawfully stopped
automobile to get out of their car. *See Pennsylvania v. Mimms*, 434 U.S.
106, 110-11 (1977); *Maryland v. Wilson*, 519 U.S. 408, 415 (1997)
(extending the *Minns* rule to passengers).  However, officers need
reasonable suspicion of another crime to prolong the duration of a
traffic stop beyond the time it takes "to address the traffic violation that
warranted the stop" and "attend to related safety concerns." *Rodriguez*,
575 U.S. at 354; *United States v. Brewer*, 858 F. App'x 888, 889–90 (6th
Cir., 2021).

Here, McGuckin stopped the vehicle Smith was driving for not
having a license plate affixed to the vehicle.  When McGuckin spoke
with Smith and asked for his license and registration, Smith confirmed
that he was also operating the vehicle without a driver's license and

11

could not produce the vehicle's registration paperwork.  A few minutes later, McGuckin asked Smith to exit the vehicle.  None of those facts are disputed by Defendant, and Defendant does not dispute that there was a valid reason to conduct a traffic stop; instead, Smith argues that the stop was only prolonged because McGuckin had a hunch that Smith had contraband in the car, but McGuckin did not have reasonable suspicion to prolong the stop to investigate that theory under *Rodriguez*.

The citation and warning for the missing license plate, however, were not the only activities incident to the mission of the traffic stop at issue.  An officer's discovery that the defendant was driving without a license "justifiably extend[s] the lawful scope of the traffic stop" because of the defendant's legal inability to remove the vehicle from the scene and the consequential need for a licensed driver or tow truck to do so. *United States v. Johnson*, No. 4:20-CR-40109-KES, 2021 U.S. Dist. LEXIS 52210, at *49 (D.S.D. Mar. 16, 2021) (citing *United States v. Soderman*, 983 F.3d 369, 374 (8th Cir. 2020), *United States v. Ovando-Garzo*, 752 F.3d 1161, 1164 (8th Cir. 2014))).  Here, the fact that Smith was driving without a license justifiably extended the length of the stop. The total time that the officer had stopped Smith was less than six

12

minutes.  The first two minutes consisted of Smith looking for – and not

finding – the vehicle's paperwork.  The next minute involved Smith

calling the owner of the vehicle over the phone to try and locate the

paperwork, while still searching the car for the documents.  *See*

*generally* McGuckin Bodycam at 12:31:15-34:15.  The next

(approximately) two minutes involved McGuckin trying to convince

Smith to let him search the vehicle.  *See* McGuckin Bodycam at

12:34:00-35:20.  He told Smith that he was not going to take Smith to

jail, that he did not want to arrest Smith.  Smith, in reply, told

McGuckin several times that he only had marijuana in the car.

McGuckin told Smith that any marijuana in the car was legal and he

would not do anything about it.  McGuckin implied he would search the

car after asking Smith to exit the vehicle.  *See id.*  McGuckin then asked

Smith to exit the vehicle.  When Smith exited the vehicle, he took off

running.

The time Smith spent looking for the vehicle's paperwork, about

three to four minutes, was part of the ordinary course of the traffic stop.

The court doubts that the "delay" beyond that point would be

unconstitutional in this case.  Although even "incremental" increases to

a traffic stop without a reasonable basis may violate the Fourth
Amendment, *see Rodriguez*, 575 U.S. at 357, McGuckin needed an
opportunity to complete his investigation of Smith driving without a
license, to verify the vehicle was not stolen, to verify it was insured, to
determine whether Smith had outstanding warrants, and to issue
Smith a citation for his traffic violations. All of those activities are
legitimately related to the traffic stop. Here, McGuckin had not even
had an opportunity to finish any of these tasks because Smith fled, and
the video shows that most of these tasks were still in-progress or yet to
be completed during the relatively brief time that had passed. That
said, Defendant correctly points out that *Rodriguez* held that it does not
matter if the unreasonable prolonging of the stop occurs before traffic-
related tasks are completed. *See Rodriguez*, 575 U.S. at 356 ("On-scene
investigation into other crimes, however, detours from that mission [of
the stop itself.]"); *Hernandez v. Boles*, 949 F.3d 251, 256 (6th Cir. 2020)
(*Rodriguez* clarifies that *any* extension of a traffic stop absent
independent reasonable suspicion is improper.") (emphasis added). So
assume, for the moment, that Smith is correct that McGuckin
temporarily, but completely, abandoned his investigation and citation of

14

Smith's traffic offenses, and there was an approximately two- or three-minute delay in "extending" the stop that *only* involved McGuckin asking Smith to search the vehicle based on an unreasonable suspicion that Smith had illegal items in the car.  Even in that scenario, that delay was not unconstitutional because during the traffic stop McGuckin developed probable cause to arrest or cite Smith for driving without a license, and, lacking a valid license, the traffic stop would not have ended until someone came to pick up Smith or Smith was arrested.  In other words, even if the investigation of his traffic offenses was "over," and McGuckin was moving on to ask Smith unrelated questions, Smith could not have driven away within that short time. *See, e.g.*, *United States v. Pritchett*, 749 F.3d 417, 437 (6th Cir. 2014) (holding that a "ten minute delay was not unconstitutional because during the traffic stop Officer Hawes developed probable cause to arrest Rollins for driving without a valid driver's license"); *Johnson*, 2021 U.S. Dist. LEXIS 52210 (traffic stop not unreasonably extended by defendant's legal inability to remove the vehicle from the scene). McGuckin therefore did not unreasonably prolong the duration of the traffic stop beyond the time it would have taken "to address the traffic

violation that warranted the stop" and "attend to related safety concerns." *See Rodriguez*, 575 U.S. at 354.

## B.    The officer lacked probable cause under the automobile exception

Defendant next argues that the search of the vehicle was illegal because there was no probable cause under the automobile exception, and Smith was too far from the vehicle to justify a search incident to arrest. ECF No. 15, PageID.44.  The government argues that the search was permissible under the automobile exception because there was probable cause to conduct a search.  ECF No. 16, PageID.54.[2]  In *United States v. Lumpkin*, 159 F.3d 983, 986 (6th Cir. 1998), the Sixth Circuit held that under the automobile exception to the Fourth Amendment's search warrant requirement, law enforcement officers may search a readily mobile vehicle without a warrant if they have probable cause to believe that the vehicle contains evidence of a crime.  The Government's reliance on the issue, and the fact that McGuckin did in fact search the

---

[2] The government does not appear to contend that they could have searched the vehicle incident to Smith's arrest.  That exception does not appear to apply here where Smith had fled the scene and was arrested far from his vehicle.  *See Arizona v. Gant*, 556 U.S. 332, 343 (2009) (holding that police to may "search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search").

vehicle apparently relying on that exception, warrants addressing the question in full.  It is clear from the video and McGuckin's testimony that he suspected there was an illegal item in the car.  *See, e.g.*, McGuckin Bodycam at 13:34:30 ("I think you have something you're probably not supposed to have.").  It is also clear that McGuckin would have searched the car even if Smith had not run away, since he told Smith he intended to do that.  McGuckin Bodycam at 12:34:45 ("I could just take you out, put you in handcuffs, and then search your car and find whatever it is you're not supposed to have.").  But McGuckin's hunch – even if later proven accurate – does not satisfy the probable cause standard; more was needed to justify a warrantless search.  The court concludes that McGuckin lacked probable cause to search the vehicle and the search was not justified by the automobile exception.

"A police officer has probable cause to conduct a search when the facts available to him would warrant a person of reasonable caution in the belief that contraband or evidence of a crime is present." *Florida v. Harris*, 568 U.S. 237, 243 (2013) (cleaned up).  "[A]s a general rule, someone in otherwise lawful possession and control of a [] car has a reasonable expectation of privacy in it even if" a formal document "does

not list him [] as an authorized driver." *See Byrd v. United States*, 584

U.S. 395, 398-99 (2018); *United States v. Ewing*, No. 2:21-cr-20198-

JPM, 2022 U.S. Dist. LEXIS 124758, at *20 (W.D. Tenn. July 14, 2022)

("[T]here has been no . . . proof[]that Ewing unlawfully obtained use of

his sister's car.  Accordingly, the Court finds that Defendant's presence

in the driver's seat and as the vehicle's sole occupant, as a presumed

permissive user, establishes . . . [a] reasonable expectation of privacy in

the vehicle.").  McGuckin testified at the evidentiary hearing that the

indicia he relied on to believe Smith had a firearm and to search the

vehicle was 1) Smith's nervous demeanor, 2) that Smith did not

"immediately" comply with the request to get out of the car, and 3) that

Smith ran away upon exiting the vehicle.

The first reason – Smith's nervousness – is insufficient on its own,

and unreliable in any case.  The Sixth Circuit has consistently held that

"nervousness" is a particularly weak and unreliable indicator of

criminal activity during a traffic stop.  *See United States v. Winters,* 782

F.3d 289,299 (6th Cir. 2015), *United States v. Richardson*, 385 F.3d 625,

630-31 (6th Cir. 2004) ("it is an unreliable indicator, especially in the

context of a traffic stop"); *United States v. Stepp*, 680 F.3d 651, 665 (6th

Cir. 2012); *United States v Bell*, 555 F.3d 535, 540 (6th Cir. 2009); *United States v. Urrieta*, 520 F.3d 569, 577 (6th Cir. 2008). This is based on the recognition that "[m]any citizens become nervous during a traffic stop, even when they have nothing to hide or fear." *Winters*, 782 F.3d at 299 (quoting *Richardson*, 385 F.3d at 630-31). And of further note, all of the above cases that consider nervousness find it weak evidence of criminal activity as part of the lower "reasonable suspicion" analysis, not the higher probable cause bar. In a probable cause analysis, the court gives Smith's nervousness very little weight.

The second reason McGuckin gave why he had probable cause search the vehicle is that Smith did not "immediately" exit the vehicle. This is not particularly credible – the video does not show an unusually tense conversation or that Smith was actively resisting the order, or even that he facially rejected the order – at most, he delayed by less than a minute while saying he had marijuana in the car. When McGuckin repeats the order, Smith exits the vehicle without complaint – hardly clear evidence of criminality. However, treating this alleged reason generously, the court notes that during the time Smith did not "immediately" exit the vehicle, he instead insisted that he had

marijuana in the vehicle ("It's just marijuana," "That's all I've got in the car," "That's all I got") (McGuckin Bodycam at 12:35:24-40) – which could be understood to imply something along the lines of, there was something in the vehicle, but "whatever is in here, it's only marijuana." So, perhaps McGuckin meant that the statements Smith made while not getting out of the car were one indicator that he had illegal items in the car. At most, however, Smith's repeated statements that he had a concededly legal item in the car could have been one slight indicator giving rise to reasonable suspicion that he had contraband in the vehicle and might have justified a longer investigation – but would not give probable cause to search.

The third reason – Smith running away – is also of low value for the probable cause analysis as to a search of the automobile. Courts have considered flight as one indicator among many for the reasonable suspicion or probable cause analysis, but is similarly insufficient on its own. To meet the probable cause standard, courts look for direct evidence that a vehicle would contain contraband. *See United States v. Wilson*, No. 22-1587, 2023 U.S. App. LEXIS 14471, at *8 (6th Cir. June 8, 2023) (police had probable cause to search defendant's abandoned

vehicle for contraband after he fled on foot because, while fleeing, he discarded a firearm and drugs that officers recovered; the court concluded they could reasonably assume more contraband would be found in the vehicle); *United States v. Smith*, No. 3:19-CR-22-KAC-DCP, 2022 U.S. Dist. LEXIS 194923, at *25 (E.D. Tenn. Sep. 16, 2022) (probable cause where one of three passengers fled the scene and remaining occupants lacked driver's licenses, but more importantly, police also had reports of gift card fraud involving individuals matching driver and passengers' descriptions, matching description of the car they were using, one defendant had the false gift cards on his person, and a number of gift cards were in plain view inside the vehicle); *cf. Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (unprovoked flight in a high-crime area created reasonable suspicion for a *Terry* stop, though not probable cause).  Here, though, McGuckin had no actual evidence of any contraband in the vehicle – just his unverified belief based on Smith's demeanor.  The only thing that Smith indicated he did have, marijuana, was not contraband because it was legal in the state of

21

Michigan.[3]  "[E]ven where the government points to several factors that this court has 'recognized as valid considerations in forming reasonable suspicion,' they may not together provide reasonable suspicion if 'they are all relatively minor and . . . subject to significant qualification,' particularly where the 'case lacks any of the stronger indicators of criminal conduct that have accompanied these minor factors in other cases.'" *United States v. Bell*, 555 F.3d 535, 540 (6th Cir. 2009) (quoting *United States v. Townsend*, 305 F.3d 537, 545 (6th Cir. 2002)).  In this case, Smith's statements and flight might have been enough to reach reasonable suspicion justifying some additional investigation (the court does not and need not conclude one way or the other), but those indicia alone were certainly not enough to meet the probable cause bar and did not justify the warrantless search.  However, the analysis does not end there.

## C.    The gun would inevitably have been discovered

In *Nix v. Williams*, the Supreme Court adopted the inevitable discovery doctrine as an exception to the exclusionary rule.  467 U.S.

---

[3] The subsequent search did not actually turn up any marijuana.  ECF No. 16, PageID.55.  But of course, McGuckin was not aware of that until after the search was completed.

431, 443 (1984).  "The inevitable discovery doctrine allows for the admission of evidence that would have been discovered even without the unconstitutional source."  *United States v. Cooper*, 24 F.4th 1086, 1091 (6th Cir. 2022) (cleaned up).  It is the Government's burden to show, by a preponderance of the evidence, "that the [evidence] ultimately or inevitably would have been discovered by lawful means . . . ."  *Nix*, 467 U.S. at 444.

The Sixth Circuit has outlined two scenarios where the inevitable discovery exception applies.  *See Cooper*, 24 F.4th at 1091.  First, the exception applies when "an independent, untainted investigation" was bound to uncover the evidence.  *United States v. Kennedy*, 61 F.3d 494, 499 (6th Cir. 1995).  Second, the inevitable discovery exception applies "when other compelling facts demonstrate that discovery was inevitable."  *Cooper*, 24 F.4th at 1091 (internal quotations omitted).  The government bears the burden of showing that the exception applies.  *Nix*, 467 U.S. at 444; *United States v. Alexander*, 540 F.3d 494, 502 (6th Cir. 2008).  While answering the hypothetical posed by the doctrine inherently requires some conjecture, *United States v. Leake*, 95 F.3d 409, 412 (6th Cir. 1996), courts must "keep speculation at a minimum

23

by focusing on 'demonstrated historical facts capable of ready verification or impeachment.'" *United States v. Ford*, 184 F.3d 566, 577 (6th Cir. 1999) (quoting *Nix*, 467 U.S. at 444 n.5). The Sixth Circuit has held that a standard inventory search before towing a vehicle is a routine practice that requires little guesswork and is generally covered by the second category of the inevitable discovery exception. *United States v. Cooper*, 24 F.4th 1086, 1094 (6th Cir. 2022) (citing *United States v. Pritchett*, 749 F.3d 417, 437 (6th Cir. 2014); *United States v. Kimes*, 246 F.3d 800, 804 (6th Cir. 2001)).

The questions for the court to answer in this case, and for the government to prove, are the following: if the illegal search had never happened, would McGuckin have impounded the vehicle? And would the ensuing inventory search have led to the discovery of the gun? The inevitable discovery exception applies only if the answer to both questions is "yes." *Cooper*, 24 F.4th at 1096. That is the case here.

Although McGuckin searched the vehicle without a warrant, McGuckin testified that he would not have allowed the car (which had been abandoned by Smith when he ran away) to remain in a lane of traffic, and would have impounded it. He also testified that he would

24

not have allowed Smith to leave with the car anyway – Smith was not authorized to drive it, on account of not having a driver's license, and there was no passenger who could have done so in his place.  Perhaps impoundment was not the only option available (Smith presumably could have, for example, called a private tow or the vehicle's owner to collect it), but there is no evidence that Smith ever sought those options before he ran.  *See, e.g.*, *United States v. Kimes*, 246 F.3d 800, 805 (6th Cir. 2001) (holding that although police may permit vehicles to be picked up by a driver's friends or relations, that does not compel the conclusion that officers must take it upon themselves to call those people and ask them to get the vehicle); *United States v. Arnold*, No. 19-20193, 2019 U.S. Dist. LEXIS 177868, at *24 (E.D. Mich. Oct. 15, 2019) (under department policy, the vehicle owner could use a private tow to avoid impoundment, but there was no evidence the owner ever did that, so the court credited the explanation that impoundment would have occurred).  McGuckin testified that it was MSP policy to impound the vehicle, and the Government provided MSP's vehicle inventory policy. *See* ECF No. 16-1, PageID.61 (officers shall inventory abandoned "[p]roperty that an enforcement member determines necessary to take

into custody."); *Kimes*, 246 F.3d at 805 (Discretion as to impoundment is permissible "so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity."). McGuckin's testimony, Smith's flight, and the inventory policy all make McGuckin's statement that he would have impounded the vehicle and that it would have been inventoried sufficiently credible under the circumstances of the case, and there is no contravening testimony or evidence available to conclude otherwise. After Smith ran away, his car was left in an active traffic lane and there was no indication that someone was coming to get the vehicle. *See* McGuckin Bodycam at 12:31:05-07. The court concludes that the government has shown that the vehicle would have been impounded and inventoried even if the illegal search had never occurred. *See, e.g.*, *Arnold*, 2019 U.S. Dist. LEXIS 177868, at *24 (Where neither occupant of a car had a driver's license, and decision to impound would have been valid because car was in road and traffic hazard, finding inevitable discovery applied because "[e]ven if Officer Roberts had not searched the glovebox illegally, that compartment eventually would have been opened, searched, and inventoried, and the gun . . . would have been

26

found."); *United States v. Hockenberry*, 730 F.3d 645, 660 (6th Cir. 2013) (officers acted within their discretion to impound a vehicle when none of the vehicle's occupants were authorized to drive the vehicle).  Given the gun's location under the passenger seat, there is no evidence suggesting that the gun would not have been discovered in an ordinary inventory search upon impounding the vehicle.

The motion to suppress must therefore be denied.

## V.    CONCLUSION

Therefore, the Court **DENIES** the Motion to Quash Indictment (ECF No. 20) and the Motion to Suppress (ECF No. 15).

The court notes that within his motion to suppress, Smith also moved to suppress his statement to police under the exclusionary rule in a very brief paragraph with the assertion that "fleeing arrest is not a crime."  ECF No. 15, PageID.44 (quoting *People v. Reinhardt*, 141 Mich App. 173 (1985)).  However, the subsequent briefings focused almost entirely on the gun itself.  The court finds that argument undeveloped and therefore denies that portion of the motion without prejudice.

27

**SO ORDERED**.


Date: March 26, 2025                    s/F. Kay Behm
                                        F. Kay Behm
                                        United States District Judge