UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,                Case No. 24-20376

      Plaintiff,                          Hon. F. Kay Behm
v.                                       United States District Judge

MONTINEZ SMITH,                          Hon. Curtis Ivy Jr.
                                         U.S. Magistrate Judge

      Defendant.

_____ /

**OPINION AND ORDER ON DEFENDANT'S MOTIONS IN
LIMINE (ECF Nos. 26, 43, 44) AND PROPOSED JURY
<u>INSTRUCTIONS</u>**

## I.     PROCEDURAL HISTORY

This matter is before the court on Defendant Montinez Smith's

("Smith") Motions in Limine in advance of his scheduled jury trial for

alleged possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (ECF

No. 20).  ECF Nos. 26, 43, 44.  A hearing was held on May 20, 2025, at

which counsel for both parties appeared.

Smith moves for the court to exclude certain testimony by the

trooper who pulled him over (ECF Nos. 26, 43) and to notice certain

facts regarding his supervised release status at the time of the traffic

stop (ECF No. 44).  For the reasons set out below, the court **GRANTS**

the motions in part and **DENIES** them in part.

## II.   FACTUAL BACKGROUND

Smith is charged with possession of a firearm in violation of 18

U.S.C. § 922(g)(1) (often referred to as the federal felon-in-possession

law).  The firearm in question was found after a traffic stop in a search

of the borrowed car Smith was driving.

More specifically: on July 6, 2024, at about noon, Smith was alone

driving his girlfriend's car.  ECF No. 15, PageID.40.  It did not have a

license plate displayed.  Trooper McGuckin of the Michigan State Police

(MSP) stopped Smith for that traffic violation on Clio Road in Flint, MI.

*Id.*; *see also* McGuckin Bodycam Footage [hereinafter McGuckin

Bodycam at [timestamp]].[1]  As the trooper interviewed Smith, Smith

explained he never had a driver's license, but he did have an ID card

that he gave the trooper.  McGuckin Bodycam at 12:31:18-38.

McGuckin claims that Smith was unusually nervous; Smith argues that

he did not exhibit nervousness beyond the range of what a person would

ordinarily show in a traffic stop.  ECF No. 15, PageID.41.  McGuckin

---

[1] The court uses the timestamp in the upper right corner of the video.

tried to convince Smith to let him search the vehicle. He told Smith
that he was not going to take Smith to jail and that he did not want to
arrest Smith. Smith told McGuckin several times that he had
marijuana – and only marijuana – in the car. McGuckin Bodycam at
12:34:30. McGuckin explained to Smith that, if he had any marijuana
in the car, that marijuana was legal in the state of Michigan and that
he would not do anything about it. After McGuckin's attempts to
convince Smith to give consent to search the car, and Smith persisted in
refusing to give permission, McGuckin had Smith exit the car. *Id.* at
12:35:20. McGuckin had told Smith that this would result in a search
of the vehicle. *Id.* at 12:34:45 ("I could just take you out, put you in
handcuffs, and then search your car and find whatever it is you're not
supposed to have."). The video shows that Smith spent about 45
seconds talking with McGuckin before exiting the vehicle, repeating
that he only had marijuana in the vehicle and McGuckin reassuring
him that marijuana was legal. After confirming he could take some
belongings out of the car with him, Smith stepped out. McGuckin
started to handcuff Smith, and Smith then ran off. *Id.* at 12:36:20.

3

As Smith ran away, McGuckin radioed for backup, which included a helicopter to spot Smith.  ECF No. 15, PageID.41.  Meanwhile, McGuckin performed a warrantless search of the car (which this court found constitutional under the inevitable discovery exception, *see* ECF No. 45) and found a loaded Glock .40 caliber handgun under the front passenger seat of the car.  ECF No. 16, PageID.47.  Smith was apprehended a little over ten minutes later.  ECF No. 15, PageID.41.

Defendant has averred that Smith's girlfriend, Bridney Gibbs, owned the car, and gave a statement that it was her gun she had placed in the bag and put under the seat of her car that morning, and that she never told Smith about it or showed it to him.  *Id.*  Defendant alleges that Smith's DNA or fingerprints were not found on the gun.  *Id.*

## III.  MOTIONS IN LIMINE

The Supreme Court has recognized that "[a]lthough the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials."  *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984); *see also id.* at 40 n.2 (defining motion in limine "in a broad sense to refer to any motion, whether made before or during

trial, to exclude anticipated prejudicial evidence before the evidence is actually offered"); *Dietz v. Bouldin*, 136 S. Ct. 1885, 1891 (2016) (noting inherent "power of a judge to hear a motion in limine"). Indeed, Rule 103(d) of the Federal Rules of Evidence mandates that the court must, to the extent practicable, conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means. Fed. R. Evid. 103(d); *see also United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999) ("The Federal Rules of Evidence, the Federal Rules of Criminal and Civil Procedure and interpretive rulings of the Supreme Court and this court all encourage, and in some cases require, parties and the court to utilize extensive pretrial procedures – including motions *in limine* – in order to narrow the issues remaining for trial and to minimize disruptions at trial.").

A motion in limine is a procedural vehicle "to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013). "[A] preliminary ruling allows the parties to consider the court's ruling in formulating their trial strategy." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994). Motions in limine promote "evenhanded

and expeditious management of trials by eliminating evidence that is clearly inadmissible for any purpose." *Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004) (citing *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)).

"Irrelevant evidence is not admissible." Fed. R. Evid. 402. "The rules regarding relevancy, however, are quite liberal[.]" *Robinson v. Runyon*, 149 F.3d 507, 512 (6th Cir. 1998). Under the Federal Rules of Evidence, "[e]vidence is relevant . . . if it has *any* tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." Fed. R. Evid. 401 (emphasis added). Relevant evidence may be excluded, however, "if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Evidence is inadmissible "if there is a danger of *unfair* prejudice, not mere prejudice." *Robinson*, 149 F.3d at 514-15 (emphasis in original) (citing Fed. R. Evid. 403). The court has "very broad discretion in making this determination." *United States v. LaVictor*,

848 F.3d 428, 444 (6th Cir. 2017) (quoting *United States v. Semrau*, 693 F.3d 510, 523 (6th Cir. 2012)).

## IV.   MOTION OBJECTING TO TROOPER'S TESTIMONY REGARDING "HIGH CRIME AREA," "GANG FUNERAL," OR THE TROOPER'S STATE OF MIND (ECF No. 43)

The court begins with the simplest issue, presented in Defendant's second motion in limine.  Based on Trooper McGuckin's testimony at the evidentiary hearing on his motion to suppress, Defendant has objected to the trooper presenting any testimony to the jury about the traffic stop occurring in an alleged "high crime area" or while a "gang funeral" was allegedly occurring.  The government has represented that they do not plan on eliciting this testimony, ECF No. 50, PageID.216, and Defendant's motion is therefore granted as unopposed as to that testimony.  To the extent that Smith's motion at ECF No. 43 also objects to the trooper's testimony regarding his perceptions about Smith's behavior at the traffic stop, that particular objection is overruled (and that portion of the motion is denied) because that topic is addressed in the following discussion of Smith's motion at ECF No. 26.

## V.   MOTION REGARDING CHARACTERIZATION OF DEFENDANT'S RECORDED WORDS AND ACTIONS (ECF No. 26)

Next, Defendant objects to the portions of Trooper McGuckin's testimony that are expected to give characterizations of Smith's behavior and statements that were recorded by the trooper's body cam or dash cam, including the trooper's conclusion that Smith was nervous and that his nervousness indicated criminal behavior, and moves to exclude that testimony.  ECF No. 26, PageID.94.

Specifically, Smith argues that, because "his behavior and speech were recorded on the trooper's body camera[, t]he trooper's repetition to the jury of what is said, how it was said, and what Smith did . . . would be redundant, irrelevant and an unnecessary waste of time.  More importantly, his conclusion of whether those actions and statements exhibited 'nervousness' or were 'very fast' or that Smith was not 'focused' are conclusions of everyday actions and emotions that the jurors themselves can make by watching and listening to the recording." *Id.* at PageID.96.  Further, Smith argues that testimony about his "nervousness" is in fact expert testimony disguised as lay testimony,

8

and excludable under Federal Rule of Evidence 702.  ECF No. 26,

PageID.98.  Finally, Smith objects that the testimony would fail Rule

403's test as unfairly prejudicial, confusing, and needlessly cumulative.

The court has previously agreed with Defendant that evidence of

Smith's "nervousness" is an unreliable indicator of criminal behavior in

the context of a traffic stop.  ECF No. 45, PageID.188-89.  However, that

analysis was in the context of the "reasonable suspicion" and probable

cause analysis for Defendant's motion to suppress, and more

specifically, was for the court to evaluate whether the length of the

traffic stop was constitutionally unreasonable and whether McGuckin

had probable cause to search the automobile – a different framework

from the issue at hand.  For admissibility at trial before a jury, the bar

for "relevance" is low, and the court does not agree that the trooper's

testimony must be entirely excluded.  Rule 701 states that when "a

witness is not testifying as an expert" under Rule 702, "testimony in the

form of an opinion is limited" in that it must be: (1) "rationally based on

the witness's perception"; (2) "helpful to clearly understanding the

witness's testimony or to determining a fact in issue"; and (3) "not based

on scientific, technical, or other specialized knowledge within the scope

of Rule 702." Fed. R. Evid. 701. Testimony about Smith's alleged "nervousness" is helpful to understanding Trooper McGuckin's testimony, as it provides one reason for Trooper McGuckin's actions and could provide one piece of evidence relevant to consciousness of guilt and/or providing an explanation for Smith's flight (however unreliable that evidence may in fact be). Further, testimony that Smith was "nervous" would be rationally based on McGuckin's perceptions of the defendant; McGuckin was physically present at the traffic stop and observed Smith directly. He can speak to what he saw, heard, and experienced. Nor is testimony by McGuckin pointing out that Smith seemed nervous to him based on specialized knowledge; as Defendant points out, nervousness is an ordinary human emotion that McGuckin, like any layperson, is capable of evaluating.

Defendant's reliance on *United States v. Gyamfi*, 805 F.3d 668 (6th Cir. 2015) and *United States v. Freeman*, 730 F.3d 590 (6th Cir. 2013) to exclude McGuckin's testimony is unavailing. In *Freeman*, an agent was testifying about recorded calls and what conclusions could be drawn from those calls. The court in that case held that his testimony should have been excluded because the agent "did not testify to being

10

present for the surveillance, or even to observing any activity relevant to interpreting the calls." *Freeman*, 730 F.3d at 597.  Here, though, McGuckin has already testified to being personally present at the traffic stop (he conducted it), so *Freeman*'s central concern (that the agent was not testifying to firsthand knowledge) is inapposite.  Meanwhile, in *Gyamfi*, the court *permitted* testimony about a defendant's nervous behavior, a conclusion that Smith distinguishes by pointing to the court's statement in that case that the officer's testimony was about unrecorded conversations, while "*recorded* encounters are wholly distinct from facts where officers interpreted what they indeed perceived first-hand, in an encounter that cannot be re-played for a juror." *Gyamfi*, 805 F.3d at 674 (emphasis in original).  Smith's conclusion, then, is that officers cannot testify as to events they were present for when a contemporaneous recording exists.  *See* ECF No. 26, PageID.99.  But that line from *Gyamfi* does not go so far as to say that officers can never testify to their personal perceptions of an encounter which also happens to have been recorded; the line about "recorded encounters" is in response to the defendant's arguing that the officers' testimony was barred by *Freeman*.  The *Gyamfi* court meant that

11

testimony about interpreting recorded encounters (when the officer does *not* have firsthand knowledge of the encounter, like in *Freeman*) is necessarily distinct from testimony based on firsthand knowledge, whether that encounter was recorded or not.

*United States v. Sutherland*, No. 11-20129, 2014 WL 7338724 (E.D. Mich. Dec. 22, 2014), is instructive on this point.  In that case, the court applied *Freeman* and concluded that a special agent's interpretation of coded language in recorded phone calls was founded on sufficient personal knowledge and thus admissible because the agent had established that he was "significantly involved with the surveillance that produced the recordings as well as the underlying activities discussed in the recordings."  *Id.* at *2.  Thus the recordings were admissible, and so too was the officer's testimony about the recordings.  The court said that this was permissible because the officer's testimony was not presented as the only possible interpretation of the recordings, and therefore avoided the problem in *Freeman* of presenting a witness' testimony as conclusive evidence of the contents of a recording: "[T]he court instructed the jury multiple times that Agent[] Fleming's opinions about the meanings of the recordings are merely his

opinions, and it is the jury's responsibility to draw its own conclusions about what the recordings mean." *Id.* at *13. Here, McGuckin was both personally there and his bodycam recorded the encounter. The testimony regarding Smith's demeanor that McGuckin personally perceived during the traffic stop is admissible under Rule 701, and is not substantially more prejudicial than it is probative under Rule 403. The court can issue limiting instructions accordingly.

One caveat, however: Defendant's point that some of McGuckin's testimony could run into Rule 702's bar on undisclosed expert testimony is well taken. Specifically, the objection under Rule 702 is sustained, and the motion is granted, as to any testimony that states that in McGuckin's "training and experience, Smith was *more* nervous than the average person would be." In other words, testimony which would compare Smith's nervousness level to other persons stopped at traffic stops relies solely on McGuckin's training and experience (and not what he perceived at this *particular* traffic stop) and is properly considered expert testimony. If McGuckin were to testify, for example, that "compared to all the traffic stops I've done, Smith seemed especially nervous," then the jury would be implicitly asked to rely on McGuckin's

testimony as an expert on the subject, and to trust his opinion as someone more knowledgeable than they on a specialized subject matter – but with no opportunity to test the reliability or methodology of that experience or training, or to see the other examples of nervousness that McGuckin referred to for themselves.  "By channeling testimony that is actually expert testimony to Rule 702, the amendment [to Rule 701] ensures that a party will not evade the expert witness disclosure requirements set forth in Fed. R. Civ. P. 26 and Fed. R. Crim. P. 16 by simply calling an expert witness in the guise of a layperson."  Fed. R. Evid. 701 advisory committee's note to 2000 amendment; *see also, e.g.*, *United States v. Figueroa-Lopez*, 125 F.3d 1241, 1246 (9th Cir. 1997) (law enforcement agents testifying that the defendant's conduct was consistent with that of a drug trafficker could not testify as lay witnesses; to permit such testimony under Rule 701 "subverts the requirements of Federal Rule of Criminal Procedure 16 (a)(1)(E)"); *United States v. Stacks*, 571 F. App'x 163, 171 (4th Cir. 2014) (error, though harmless, when "there [was] no doubt that Detective Helms's testimony as to the slang terminology was not based on his observations from the recorded phone calls, but rather on his general experience as a

14

police officer.  Accordingly, his testimony was not properly admitted under Rule 701."); *United States v. Hampton*, 718 F.3d 978, 985 (U.S. App. D.C. 2013) ("An expert witness may interpret for a jury coded language generally used in drug conspiracies, much as a lay witness with personal knowledge of a particular drug conspiracy may testify on the meaning of coded language specific to that conspiracy.").

A jury is equally capable of evaluating Smith's level of nervousness given the bodycam footage available; it would not be helpful to the jury to be offered what seems to be an authoritative opinion on Smith's comparative level of nervousness, when that opinion draws on outside experiences that have not been tested for reliability under Rule 702.  *See United States v. Diaz*, No. 24-CR-0032, 2024 WL 758395, at *9 (D.N.M. Feb. 23, 2024) (finding that an officer could not offer testimony that an amount of cocaine exceeded that of personal use and was for distribution because Rule 702 "dictates a common-sense inquiry of whether a juror would be able to understand the evidence without specialized knowledge concerning the subject"). Notwithstanding that initial bar, Defendant could nonetheless open the door to this kind of testimony on redirect if he challenges McGuckin's

training and experience on body language or nervous behavior through cross-examination.  *See United States v. Watkins*, 127 F.4th 1142, 1145 (8th Cir. 2025) (where officer had removed a furnace panel to find a gun that had been placed there, his "statements about his construction experience and his knowledge of how to remove furnace panels arose on redirect solely to rehabilitate him after the defense put his lack of specialized training in furnaces at issue as a reason to discredit his testimony. . . . Both opinions were circumscribed to matters within his own knowledge and experience and did not rely on any specialized training.").  The court's ruling on this already-limited point is therefore preliminary and subject to change at trial.

The motion to exclude testimony regarding Defendant's "nervousness" is therefore **DENIED IN PART** and **GRANTED IN PART**, consistent with the above.  The court will also offer a jury instruction cautioning that the jury may decide for themselves how much weight to give testimony describing events that are depicted in the bodycam video, *see United States v. Sutherland*, No. 11-20129, 2014 WL 7338724 (E.D. Mich. Dec. 22, 2014), and will give the parties a chance to object to the wording of that proposed instruction.

16

# VI. MOTION REQUESTING JUDICIAL NOTICE OF DEFENDANT'S SUPERVISED RELEASE STATUS (ECF No. 44)

The last motion, though not the last issue, presently before the court is Defendant's motion for the court to take judicial notice of certain facts. To establish Smith's guilt for violation of 18 U.S.C. § 922(g)(1), the Government must show beyond a reasonable doubt that "the defendant knowingly possessed the firearm specified in the indictment." *United States v. Morrison*, 594 F.3d 543, 544 (6th Cir. 2010). Smith argues that there is no "direct evidence that can be presented by the Government" establishing that he had knowing control of the gun. "There are no fingerprints or DNA tying Smith to the gun. The gun was not visible. The car was not Smith's. There is no showing that Smith had been driving the car for any significant time. The Government must rely on circumstantial evidence to prove Smith's knowledge." ECF No. 51, PageID.225.

One expected issue at trial, then, will be competing explanations for why Smith ran away from McGuckin at the traffic stop. The Sixth Circuit has held that flight is generally admissible to suggest

17

consciousness of guilt, and that "juries are given the power to determine how much weight should be given to such evidence." *United States v. Swain*, 227 F. App'x 494, 497–98 (6th Cir. 2007) (citing *United States v. Touchstone,* 726 F.2d 1116, 1119 (6th Cir. 1984) (second quoting citation omitted).  Smith essentially plans to rebut any inference of guilt by showing that he ran for an innocent reason.  As one part of his defense at trial, he will likely claim that he ran from the traffic stop *not* because he knew he had a gun in the car, but solely because he knew he was then on supervised release for two prior convictions, and that either possession of marijuana (which he claimed he had on him at the time)[2] or driving without a license (which he admitted to) would violate the terms of his release and could result in criminal penalties.  Thus, he ran away from McGuckin to try to avoid those penalties – and that would suggest an innocent explanation for his flight, as far as the currently charged crime is concerned.  Relevant to that explanation, he asks the court to judicially notice his supervised release status at the time of the

---

[2] According to the parties, no marijuana was actually found in the search of the vehicle.  *See* ECF No. 16, PageID.55.

traffic stop, the terms of his release, and the potential criminal penalties for violating his release.

The government argues that the court should not take notice of this information at all, but if the court does take notice of his supervised release status and potential penalties for violating it, that this would open the door to a) Smith's "prior positive drug tests and the lack of revocation or even request for change in [supervised release] conditions from his prior positive drug tests," offered to prove Smith's knowledge that he had not actually faced criminal penalties in the past for controlled substances or other violations of his release and would not have feared penalties for those acts, and b) Smith's prior convictions for felon-in-possession of a firearm and the potential penalties for possessing a firearm, offered to prove Smith's knowledge of the potential criminal penalties for unlawfully owning a gun as an alternative motivation for his flight.  In essence, the Government says that if Smith is allowed to bring in evidence to present his theory that he fled for innocent reasons (his fear of prison time for violating the terms of his supervised release), then they should be permitted to present the alternative explanation – that Smith ran because he knew

19

(and feared) there would be criminal consequences for possessing a gun, that he knew that prison time for marijuana or driving without a license was unlikely, and that therefore the most likely explanation for his flight is consciousness of guilt of the crime charged.

For the reasons below, the court agrees that, if Smith wants the court to take notice of his supervised release status, as well as the potential penalties for marijuana possession or driving without a license, then introduction of that evidence opens the door to the jury hearing about the actual consequences he has faced for prior supervised release violations and his prior convictions for felon in possession, to prove his knowledge of the criminal penalties related to supervised release violations and for unlawful possession of a gun. The motion is therefore conditionally granted in recognition that this finding may change Defendant's position. *See United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994) (a "preliminary ruling allows the parties to consider the court's ruling in formulating their trial strategy"). The court will not take judicial notice of the requested facts until Defendant informs the court of his intention to proceed under these conditions. The motion is denied to the extent that Smith, in subsequent briefings,

sought to exclude the evidence the government has raised in response. The court's reasoning is given in more detail below.

### A.    Rule 404(b) and Rule 403

Federal Rule of Evidence 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," Fed. R. Evid. 404(b)(1), but "[t]his evidence may be admissible for another purpose, such as proving *motive*, opportunity, *intent*, preparation, plan, *knowledge*, identity, absence of mistake, or lack of accident." *Id.* 404(b)(2) (emphasis added). This rule codifies the common law tradition of "disallow[ing] resort by the prosecution to" propensity evidence — that is, "evidence of a defendant's evil character to establish a probability of his guilt." *Michelson v. United States*, 335 U.S. 469, 475 (1948). Such "propensity evidence is relevant," but "the risk that a jury will convict for crimes other than those charged — or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment — creates a prejudicial effect that outweighs ordinary relevance." *Old Chief v.*

21

*United States*, 519 U.S. 172, 181 (1997) (quoting *United States v. Moccia*, 681 F.2d 61, 63 (1st Cir. 1982)).

Relevant evidence that is admissible under Rule 404(b) may nevertheless be excludable under Rule 403 because "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; *Old Chief*, 519 U.S. at 182 ("[E]vidence of a prior conviction is subject to analysis under Rule 403 for relative probative value and for prejudicial risk of misuse as propensity evidence."). Critically, the test focuses on "unfair" prejudice; evidence "is not unfairly prejudicial merely because it has an adverse effect on the defense; unfair prejudice occurs only when 'the jury responds negatively to some aspect of the evidence unrelated to its tendency to make the contested fact more or less probable.'" *United States v. Higgins*, 526 F. Supp. 3d 311, 317 (S.D. Ohio 2021) (quoting *United States v. Savinovich*, 845 F.2d 834, 837 (9th Cir. 1988).

Further, by the express terms of Rule 403, 404(b) evidence is admissible unless "its probative value is *substantially* outweighed by a

22

danger of . . . unfair prejudice," Fed. R. Evid. 403 (emphasis added), and thereby the identified danger must be amply weighty to warrant exclusion of otherwise probative relevant evidence. Hence, the Sixth Circuit has opined that Rule 404(b) favors admissibility; it is a "rule of inclusion, not exclusion." *Higgins*, 526 F. Supp. 3d at 316 (quoting *United States v. Myers*, 102 F.3d 227, 234 (6th Cir. 1996)).

"[T]he analytical method to be used in Rule 403 balancing" requires the district court "to take account of the full evidentiary context of the case as the court understands it when the ruling must be made." *Old Chief*, 519 U.S. at 182. Thus, the probative value and unfair prejudice of an item of evidence "may be calculated by comparing evidentiary alternatives," and "[t]he probative worth of any particular bit of evidence is obviously affected by the scarcity or abundance of other evidence on the same point." *Id.* at 184 (quoting 22 Wright & Graham, Federal Practice & Procedure: Evidence § 5250 (1978)).

In *United States v. Merriweather*, 78 F.3d 1070 (6th Cir. 1996), the Sixth Circuit set forth the procedure for a making a Rule 404(b) determination:

> Upon objection by the defendant, the proponent of the evidence, usually the government, should be

23

required to identify the specific purpose or purposes for which the government offers the evidence of "other crimes, wrongs, or acts." . . .

After requiring the proponent to identify the specific purpose for which the evidence is offered, the district court must determine whether the identified purpose, whether to prove *motive* or *intent* or *identity* some other purpose, is "material"; that is, whether it is "in issue" in the case.

If the court finds it is, the court must then determine, before admitting the other acts evidence, whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice under Rule 403. If the evidence satisfies Rule 403, then, after receiving the evidence, the district court must "clearly, simply, and correctly" instruct the jury as to the specific purpose for which they may consider the evidence.

*Id.* at 1076-77 (emphasis in original); *see also United States v. Allen*, 619 F.3d 518, 523 (6th Cir. 2010) (before admitting evidence under Rule 404(b), the district court must determine whether the other act is admissible for one of the proper purposes outlined in Rule 404(b), and then apply Rule 403 balancing).

**B.    The court conditionally grants Defendant's motion to judicially notice his supervised release status and potential penalties for violations.**

24

Federal Rule of Evidence 201(b)(2) states that the "court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  The court "must take judicial notice if a party requests it and the court is supplied with the necessary information," *id.* 201(c)(2), but all of the rules of evidence are subject to Rule 403 (otherwise admissible evidence may be excluded for reasons of unfair prejudice, confusing the issues, misleading the jury, undue delay, etc).  Here, Defendant has asked the court to judicially notice facts related to his supervised release.  Defendant correctly notes that it is not "subject to reasonable dispute" that 1) he was on supervised release at the time of the traffic stop, 2) that he knew that, 3) that a violation of the terms of his release can result in criminal penalties, 4) that the terms of his release included that he commit no violations of state, federal, or local law, and that he not possess controlled substances, 5) that marijuana remains a controlled substance under federal law, 6) that driving without a license is a violation of state law, 7) that sentences for supervised release violations can be served consecutively to the independent legal violation, and 8) that

25

there is at least some risk of exposure to criminal liability for breaking the terms of supervised release.[3]  *See* ECF No. 44, PageID.168-69. Because evidence of Smith's flight is relevant and admissible to suggest knowledge of his guilt, the court finds that the requested noticeable facts are relevant to proving Defendant's alternative explanation that Smith's knowledge of criminal penalties for supervised release violations suggest an innocent motivation for fleeing, and Smith may ask the court to notice them.

The government's argument in response primarily rests on the point that Smith's requested judicial notice would present a one-sided set of facts to the jury, and that a more probable motivation for Smith's flight exists.  In the Government's view, Smith "likely knew very well that driving without a license and possessing a small amount of marijuana were highly unlikely to result in any revocation of his supervised release, let alone a four-year prison term."  ECF No. 50, PageID.220.  This is because "Smith had already tested positive for Temazepam, THC, fentanyl, and norfentanyl on March 25, 2024, and

---

[3] The government debates the extent of that exposure, and fair enough. However, it is not true to say that Smith had *no* exposure to criminal punishment by violating the terms of his release, nor that he could not have nonetheless had a subjective fear of criminal punishment.

for THC on April 3, 2024, and May 8, 2024[, and n]one of those positive tests resulted in the revocation of his supervised release." *Id.* Moreover, "having this Court recite the federal penalty for possessing marijuana is laughable given that federal prosecutions of individuals for simple possession of marijuana are non-existent." *Id.* "It is actually *more* likely that Smith—while on supervision for two felon in possession of firearm cases—fled police because he knew he would be subject to severe penalties for possessing a gun not just as a felon, but a felon on supervised release for two cases where he committed the exact same offense." *Id.* at PageID.221 (emphasis in original).

Thus, the question becomes whether noticing the facts Defendant urges would "mislead" the jury, "confuse" the issues, or present an incomplete picture to the jury, as the Government posits. In the Government's view, these facts (standing alone) would "cause[] jurors to believe that Smith would necessarily have his supervised release revoked for an arrest of driving without a license—which is untrue. It also is incomplete because it lists the penalties for certain offenses but not the larger penalty for felon in possession of a firearm."

27

The court agrees with the Government – the facts that Defendant asks the court to notice offer an incomplete picture left on their own, and if presented to the jury without any context, the risk of misleading or confusing the jury substantially outweighs their probative value. If noticed, they must therefore necessarily open the door to alternative explanations. If Smith chooses to put his knowledge of particular criminal penalties and his resulting motive for fleeing into issue, then the government must be permitted to offer the alternative explanation: first, that Smith's two prior convictions for felon in possession tend to prove his knowledge of the criminal penalties for unlawfully possessing a firearm and thus tend to suggest a different motivation for his flight than the one Smith plans to propose, and second, that the lack of consequences for prior supervised release violations tend to prove that Smith knew that minor violations such as simple marijuana possession or driving without a license were unlikely to result in severe penalties or prison time, and that those violations therefore are less likely to explain his motive for fleeing.

## C.    If Defendant puts his motive for flight into issue by claiming that he feared the consequences of

**supervised release violations, he opens the door to evidence of what consequences he has in fact faced for prior supervised release violations as proof of his knowledge of the likelihood of those consequences and of his motive for fleeing. A limiting instruction will be given.**

The court first addresses Smith's argument that his prior supervised release violations and the potential consequences for violating his release be barred. Specifically, Smith allegedly tested positive for various drugs while on supervised release, and none of those positive tests resulted in the revocation of his supervised release. Further, Smith allegedly failed to obtain employment and perform community service as required by the terms of his supervised release. The Government will likely seek to admit proof of both in response to Smith's noticed facts.

Smith argues that admission of these facts should be barred as unfairly prejudicial under Rule 403. *See* ECF No. 51, PageID.228. The government argues that the purpose of admitting his prior supervised release violations would be that "Smith also likely knew very well that

29

driving without a license and possessing a small amount of marijuana were highly unlikely to result in any revocation of his supervised release, let alone a four-year prison term."  ECF No. 50, PageID.220. The court starts from the beginning: their initial admissibility as relevant for a permissible purpose under 404(b), and then whether 403 permits their admission.

First, the fact of the consequences Smith encountered in prior supervised release violations are relevant, because they speak directly to the point Smith is making – that he subjectively feared the criminal consequences of supervised release violations and that is why he ran. Second, admitting this history for this purpose comports with Rule 404(b), because these prior acts would be admitted to prove Smith's "knowledge" of the actual consequences he was likely to face for a controlled substance supervised release violation, which in turn speaks to his "motive" for fleeing the scene.  These facts would also only be admitted if Defendant puts his specific motive for running away "in issue" by asserting that he fled the scene because he feared the criminal consequences of a supervised release violation.  *See Merriweather*, 78 F.3d at 1076 (the court must find the fact will be "material" or "in

30

issue").  Smith asks the court to notice that he could have conceivably faced years of imprisonment for supervised release violations for driving without a license or marijuana possession, and intends to use that to prove he feared those consequences; the natural corollary is that the Government may ask the court to notice that Smith in fact faced no revocation of supervised release for controlled substance use or other minor violations in the past, and use that to prove that Smith did not fear those consequences.

The only question remaining, then, is whether the admission of such evidence comports with Rule 403 – whether, despite their probative value, they are substantially outweighed by the risk of unfair prejudice.  Here, proof of these prior acts would be admissible under Rule 403.  Although the evidence of Smith's positive drug tests while on supervised release, along with his failure to gain employment within the required time period or complete community service, is undoubtedly prejudicial (and fairly unrelated to the essential elements of the charge), it is not substantially more unfairly prejudicial than it is probative in this instance, because the evidence will only be admitted if Defendant puts these facts at issue by claiming that he subjectively

feared substantial criminal punishment for possessing marijuana[4] or

driving without a license.  The risk of prejudice posed by admission of

these facts would not be unfair in this circumstance, where the

defendant himself opens the door to their admission.

The court disagrees, however, that Defendant's theory would open

the door to testimony on the general practices of the probation

department regarding controlled substances or driving without a

license.  What probation does for everyone else (or what the general

practice of the U.S. Attorney's Office is) is irrelevant to what Smith

subjectively knew or feared – what is relevant to his knowledge and fear

of supervised release violations are 1) the "on paper" potential

consequence that he was made aware of, and 2) what consequences, if

any, Smith has in fact faced for prior violations.  Once presented with

evidence of Smith's past acts, many of which went without criminal

---

[4] The Government argues that, because no marijuana was found, "reciting the penalty for a crime Smith did not commit makes little sense."  ECF No. 50, PageID.220.  In other words, the Government questions whether extended discussion of the consequences of possessing marijuana (that was not there, apparently) would confuse the jury.  However, the bodycam video contains extensive discussion of alleged marijuana already; assuming that video is played at trial, the jury will presumably already be confronted with Smith's claim that he had marijuana in the car, and the Government will have to in some way explain the relevance of that discussion to prevent confusion regardless.  In light of that, the court does not find that this additional discussion would be unduly confusing.

sanction, a jury is capable of inferring that the probation department

does not consider violations of that character to be high-priority,

making the point the Government wishes without permitting

speculative evidence on what punishment Smith might have incurred in

a hypothetical situation.[5]

The court will allow the parties to submit proposed limiting

instructions on this evidence for the court to read to the jury.

**D.    If Defendant puts his motive for flight into issue by claiming that he feared the consequences of supervised release violations, he also opens the door to evidence of his prior convictions for felon-in-possession for the purpose of proving knowledge of the criminal consequences of having a gun and motive for flight.  A limiting instruction will be given.**

Lastly, the court addresses Smith's argument that the

Government should not be allowed to introduce evidence of his two prior

---

[5] It is for this reason that the court does not give a great amount of weight to the Government's argument that Smith's arguments open the trial "to a side-trial on the actual consequences of what would have occurred from driving without a license and possessing marijuana while on release."  ECF No. 50, PageID.221.  The court will only permit evidence of what violations have actually occurred in the past and what consequences Smith actually faced for those violations.

felon in possession convictions, even if he argues to the jury that he fled the scene only because he feared the criminal consequences of supervised release violations, because of the substantial risk of unfair prejudice and lack of probative value.  Smith says that his prior convictions are "not probative in any way to the question of Smith's knowledge of the presence of the gun in the car.  (As distinguished, for example, if his defense was he saw an object but did not know it was a gun)."  ECF No. 51, PageID.228.  The court disagrees with this argument; Smith's knowledge of his own prior convictions for unlawfully possessing a gun, and therefore the knowledge of the attendant criminal punishment, has probative value to prove that he fled the scene because he was conscious of the consequences of unlawfully possessing a gun.  Undoubtedly, this evidence is of a prejudicial nature, and his prior convictions must likely be excluded – even for this same purpose – if Smith does not put his knowledge of the criminal consequences of supervised release violations into issue.  *See United States v. Martin*, No. 13-20184, 2013 U.S. Dist. LEXIS 98894, at *11 (E.D. Mich. July 16, 2013) (one consideration in admitting evidence of prior convictions is "whether the 'reverberating clang' of the evidence

34

that Defendant committed the same or similar crime on another
occasion will 'drown the weaker sound' of the other evidence in the case,
'leaving the jury to hear only the inference that if the defendant did it
before, he probably did it again.'") (citing *United States v. Merriweather*,
78 F.3d 1070, 1077 (6th Cir. 1996)); *see also Old Chief v. United States*,
519 U.S. 172, 185, 117 S. Ct. 644, 652 (1997) (in felon in possession
case, "[w]here a prior conviction was for a gun crime . . . the risk of
unfair prejudice would be especially obvious").

But that general rule must yield here, where the defendant
himself seeks to put his motivation for fleeing at issue and will claim
that he feared only the consequences of certain supervised release
violations, but not the consequences of being found with an unlawful
firearm.  For one, it is a well-established general principle that prior
felon-in-possession convictions are admissible for the purpose of proving
"knowledge" or for other non-propensity uses under Rule 404(b), and
that Rule 403 does not categorically bar their admissibility even when
the prior convictions are of the same character as the presently-charged
crime.  *See, e.g.*, *United States v. Johnson*, 27 F.3d 1186, 1194 (6th Cir.
1994) ("Knowledge is a 'material issue' when the defendant claims he

was unaware that he was committing a criminal act."); *United States v. Coleman*, 68 Fed. App'x. 300, 306 (3d Cir. 2003) ("Coleman put at issue during trial whether he had knowledge of, and thus possessed, the shotgun and narcotics found in the apartment . . . .  The District Court admitted this evidence [that he previously possessed a shotgun similar in appearance] not to permit the prosecution to show Coleman's propensity to possess a firearm or narcotics, but instead 'as proof of . . . knowledge' of their presence in the apartment, a permissible purpose pursuant Rule 404(b)."); *United States v. Cassell*, 352 U.S. App. D.C. 84, 292 F.3d 788, 793 (D.C. Cir. 2002) (noting, in a felon in possession case, that "[w]e have previously held that 'in cases where a defendant is charged with unlawful possession of something, evidence that he possessed the same or similar things at other times is often quite relevant to his knowledge and intent with regard to the crime charged'" (quoting *United States v. King*, 347 U.S. App. D.C. 53, 254 F.3d 1098, 1100 (D.C. Cir. 2001))); *United States v. Moorehead*, 57 F.3d 875, 878 (9th Cir. 1995) (holding that prior possession of a firearm is admissible to show knowledge in a prosecution for knowingly possessing a similar weapon); *United States v. Pelusio*, 725 F.2d 161, 167-68 (2d Cir. 1983)

36

(holding that evidence of previous instances in which the defendant had been present in an automobile with a shotgun were admissible "under Fed. Rules of Evid. 404(b)[] to show that his presence in the car with the shotgun [on the occasion in question] was intentional and not a mistake or accident"); *United States v. Trent*, 443 F. App'x 860, 863 (4th Cir. 2011) ("Here . . . the prior incidents closely resemble the offense of conviction.  Accordingly, they illuminate the critical issue of whether [the defendant] knowingly possessed the firearm in the Taurus.").

Smith appears to be attempting to distinguish these kinds of cases, by saying that he has not put his "knowledge" of the gun itself in issue – only his supervised release status and his knowledge that violating the terms of that status could conceivably result in criminal consequences.  However, that construes his own argument too narrowly. If Smith claims that his motivation for running was unrelated to any criminal consequences of owning a gun, and seeks the admission of evidence to prove that point and show the criminal consequences he allegedly feared instead, then he opens the door to evidence tending to prove the competing explanation.  Relevant to Smith's explanation for his flight are the consequences he feared for violating the terms of his

37

supervised release, which is why the actual consequences of his prior violations are admissible to rebut his claims that he feared those consequences. And by asking the court to instruct the jury of the possible criminal consequences he faced for supervised release violations, he also opens himself up to the Government's presentation of evidence of the possible consequences of a felon-in-possession conviction. The Government's explanation will be that Smith knew, based on his two prior convictions for the exact same conduct, that he would face criminal consequences for unlawfully possessing a gun, and that *that* knowledge of the consequences of being found with a gun (not necessarily of the gun itself) could have motivated his flight, and reflects his consciousness of guilt of the crime charged. This use of his prior convictions, solely for the purpose of proving knowledge and motive, is permissible under 404(b).

For example, in *United States v. Gomez*, 927 F.2d 1530 (11th Cir. 1991), a defendant was charged with possession of a firearm in relation to committing a violation of the narcotics laws in violation of 18 U.S.C. § 924(c). The defendant "asserted that he routinely carried a weapon for protection because he was in the construction business in Miami," (in

38

other words, he claimed "that the gun in his glove compartment in this case had nothing to do with the drug transportation", and his "knowledge" that he had a gun was not at issue in the ordinary sense). The court said that "[i]ntroduction of a prior conviction for carrying a concealed weapon helped the government establish that Gomez was aware of the dangers of and law relating to concealed weapons and rebut Gomez's claim that the gun was for an innocent purpose and its presence was mere accident or coincidence. The district court did not abuse its discretion in allowing such evidence." *United States v. Gomez*, 927 F.2d 1530, 1534 (11th Cir. 1991); *see also United States v. Jernigan*, 341 F.3d 1273, 1281 (11th Cir. 2003) (where a traffic stop was conducted, resulting in a search which found a gun, and defendant gave officers a false name, citing *Gomez* for the proposition that defendant's prior convictions for felon in possession were admissible both to explain his behavior and to prove his knowledge of the gun found in the vehicle). As in *Gomez*, the introduction of Smith's prior convictions for felon in possession would be admitted for the purpose of establishing that Smith was aware of the dangers of, and law relating to, unlawfully possessing a firearm. As the court noted above, although that evidence

39

is undoubtedly prejudicial (and the court would ordinarily exclude it as unfairly prejudicial), its probative value is not substantially outweighed by unfairly prejudice when used for the purpose of rebutting facts that Defendant has put at issue, and then only to prove Defendant's knowledge of relevant facts and his possible motive for fleeing. As above, evidence of Smith's prior convictions must be subject to a limiting instruction, and the court will allow the parties to submit proposed limiting instructions for the court to read to the jury.

Defendant's motion to take judicial notice is therefore **CONDITIONALLY GRANTED**. The motion is also **DENIED IN PART** to the extent that the court finds that the judicial notice Defendant has requested opens the door to other evidence and judicial notice that the Defendant had argued would not be admissible under his motion. The court is prepared to grant the motion in accordance with the above, if Defendant indicates to the court that he still wishes to proceed. In submitting any proposed limiting instruction on judicially noticed facts in accordance with the above, the parties should include language complying with Federal Rule of Evidence 201(f)

40

(stating that in a criminal case, "the court must instruct the jury that it may or may not accept the noticed fact as conclusive").

## VII.  PROPOSED JURY INSTRUCTIONS

Finally, the parties have also asked the court to rule on two issues in the proposed jury instructions.  First, Defendant has asked the court to read his theory of the case to the jury.  "Even if only weak evidence supports the requested instruction, it is reversible error in a criminal case not to give an adequate presentation of a theory of defense." *United States v. Frost*, 125 F.3d 346, 372 (6th Cir. 1997).  However, "[a]lthough a district court is required to instruct the jury on the theory of defense, it is not error to refuse to give 'instructions which merely represent a defendant's view of the facts of the case,' rather than a distinct legal theory." *United States v. Chowdhury*, 169 F.3d 402, 407 (6th Cir. 1999) (citing *Frost*, 125 F.3d at 372).  Here, the Defendant's requested instruction only sets out his view of the facts (ie. explaining innocent reasons for his flight from the traffic stop other than consciousness of guilt of the crime charged).  The instructions regarding flight in general already substantially cover the relevant legal

41

framework and provide a correct statement of the law, and the court declines to give this additional instruction.  *See Frost*, 125 F.3d at 372.

Second, the parties disagree about which version of the Sixth Circuit pattern instruction 7.14 (regarding a defendant's flight) should be given.  After considering the submissions and the model instructions, the court will adopt Defendant's version of instruction 7.14.  *See* Pattern Crim. Jury Instr. 6th Cir. 7.14 (2025).

## VIII. CONCLUSION

Therefore, the court **DENIES** the motion at ECF No. 26 **IN PART**, while **GRANTING** that motion to the extent that it excludes certain limited expert testimony.  The court **GRANTS** the motion at ECF No. 43 as far as the Government has indicated they do not oppose that motion, though **DENIES** those portions which were covered by the court's analysis of ECF No. 26.  The court **CONDITIONALLY GRANTS** the motion at ECF No. 44, pending Defendant's decision whether to withdraw the motion or whether to proceed in light of the court's findings above.  Finally, Defendant's proposed theory of the case will not be read in the final jury instructions, but the court adopts Defendant's proposed instruction on flight.

**SO ORDERED**.


Date: May 28, 2025                          <u>s/F. Kay Behm</u>
                                            F. Kay Behm
                                            United States District Judge